## THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| IN RE: | § | |
|---|---|---|
| | § | CASE NO. 99-00888-PJW |
| The Cosmetic Center, Inc | § | |
| | § | |
| DEBTOR. | § | |
| | § | |

### APPLICATION FOR THE RECOVERY OF UNCLAIMED FUNDS

COMES NOW the claimant, Dilks & Knopik, LLC, attorney-in-fact for Kimco Realty Corporation, claimant, claimant, hereby petitions the Court for $73,604.33, which is the sum of all monies being held in the registry of this court as unclaimed funds, which are due to KPT Remic Loan LLC, creditor. A dividend check in the amount totaling $73,604.33 was not negotiated by the creditor and the Trustee, pursuant to 11 U.S.C. Section 347(a), delivered the unclaimed funds to the Clerk, US Bankruptcy Court.

The creditor did not receive the dividend check in the above case for the following reason:

The original dividend check was sent to a KPT Remic Loan LLC. KPT Remic Loan LLC's sole member is KPT Properties, LP, as evidenced by Exhibit A. KPT Properties, LP's sole general property is Konover Property Trust, Inc., as evidenced by Exhibit B. Konover Property Trust, Inc. merged with PSCO Acquisition Corp and subsequently changed its name to Kimsouth Realty, Inc., as evidenced by Exhibit C. Kimsouth Realty, Inc. is a wholly owned subsidiary and controlled by Kimco Realty Corporation, as evidenced by Exhibit D.

The creditor's current mailing address, phone and social security/tax identification number are:

Kimco Realty Corporation
Raymond Edwards Vice President
3333 New Hyde Park Road
New Hyde Park, NY 11042
Last four digits of SSN/TIN: 4380

Claimant now seeks to recover the funds from the Court's Registry. Wherefore, claimant prays that, upon proper notice to the U.S. Attorney's Office, the Court order that a check in the amount of $73,604.33 made payable to Kimco Realty Corporation c/o Dilks & Knopik, LLC be issued from the Court's Registry.

Dated: February 19, 2014     Respectfully Submitted: _____
Brian J. Dilks, Managing Member
Dilks & Knopik, LLC, Attorney in Fact for
Kimco Realty Corporation
35308 SE Center St
Snoqualmie, WA 98065
(425) 836-5728

# THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

On __2/19/2014__ before me, <u>Brian J. Dilks</u>, personally appeared, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person (s) whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

<u>Andrew T. Drake</u>, Notary Public
for the State of Washington, County of King
My Commission Expires: August 9, 2015

[Seal]



UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

RE: The Cosmetic Center, Inc )  Case: 99-00888-PJW
)
)  **AUTHORITY TO ACT**
)  Limited Power of Attorney
)  Limited to one Transaction
Debtor(s) )

## USED ONLY TO COLLECT FUNDS FROM THE ABOVE REFERENCED CASE

1. **Kimco Realty Corporation** with a tax identification number of **13-2744380**, ("CLIENT"), appoints **Dilks & Knopik, LLC** ("D&K"), as its lawful attorney in fact for the limited purpose of recovering, receiving and obtaining information pertaining to the outstanding tender of funds in the amount of **$73,604.33** (the "FUNDS"), including the right to collect on CLIENT's behalf any such funds that are held by a governmental agency or authority.

2. CLIENT grants to D&K the authority to do all things legally permissible and reasonably necessary to recover or obtain the FUNDS held by the governmental agency or authority. This limited authority includes the right to receive all communications from the governmental agency or authority and to deposit checks payable to CLIENT for distribution of the FUNDS to CLIENT, less the fee payable to D&K pursuant to and in accordance with its agreement with CLIENT.

3. D&K may not make any expenditure or incur any costs or fees on behalf of CLIENT without CLIENT's prior written consent.

4. This Authority to Act shall become effective on the below signed date and shall expire upon collection of the aforementioned FUNDS. I authorize the use of a photocopy of this Limited Power of Attorney in lieu of the original.

_____    _____Feb 7_____, 20 14
Raymond Edwards — Vice President                    Date

**≡KIMCO** REALTY

**Raymond Edwards**
*Vice President*
*Retailer Services*

3333 New Hyde Park Road
P.O. Box 5020
New Hyde Park, NY 11042
www.kimcorealty.com

Phone:  (516) 869-2586
Fax:    (516) 336-5686
redwards@kimcorealty.com

**Kimco Realty Corporation**
www.kimcorealty.com

**Susan L. Masone**
Paralegal

3333 New Hyde Park Road
Suite 100
Post Office Box 5020
New Hyde Park, NY 11042-0020

Phone:  (516) 869-7205
Fax:    (516) 336-5618
E-mail: smasone@kimcorealty.com

ACKNOWLEDGMENT

STATE OF _New York_ )
COUNTY OF _Nassau_ )

On this _7th_ day of _February_, _2014_, before me, the undersigned Notary Public in and for the said County and State, personally appeared Raymond Edwards known to me to be the person described in and who executed the foregoing instrument, and who acknowledged to me that he did so freely and voluntarily and for the uses and purposes therein mentioned.
WITNESS my hand and official seal.

NOTARY PUBLIC _____

Residing at _____

My Commission expires _____

SUSAN NEMEC MASONE
Notary Public, State of New York
No. 30-4627107
Qualified in Suffolk County
Commission Expires June 30, 20 14

# THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| IN RE: | § | |
|---|---|---|
| | § | CASE NO. 99-00888-PJW |
| The Cosmetic Center, Inc | § | |
| | § | |
| DEBTOR. | § | |
| | § | |

## CERTIFICATE OF SERVICE

I, Brian J. Dilks, Managing Member of Dilks & Knopik, LLC, the undersigned, do declare that on February 19, 2014, I served the within Application for the Recovery of Unclaimed Funds to the US Attorney and US Trustee listed below.

I further declare that I served a true and correct copy of the within document via United States Mail, with postage thereon fully prepaid, to the following individual(s) as follows:

> U.S. Attorney's Office
> 1201 Market Street, Ste 1100
> PO Box 2046
> Wilmington, DE 19899-2046
>
> US Trustee's Office
> 844 King Street, Suite 2207
> Wilmington, DE 19801

I declare, under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: February 19, 2014           Respectfully Submitted: _____

Brian J. Dilks, Managing Member
Dilks & Knopik, LLC, Attorney in Fact for
Kimco Realty Corporation
35308 SE Center St
Snoqualmie, WA 98065
(425) 836-5728

On 2/19/2014 before me, Brian J. Dilks, personally appeared, personally known to me (or proved to me on the basis of satisfactory evidence) to be the person (s) whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his authorized capacity, and that by his signature on the instrument the person, or entity upon behalf of which the person acted, executed the instrument. WITNESS my hand and official seal.

[Seal]

Andrew T. Drake, Notary Public
for the State of Washington, County of King
My Commission Expires: August 9, 2015

SOSID: 0479408
Date Filed: 9/7/2001 11:09 AM
Elaine F. Marshall
North Carolina Secretary of State
211350266

21 135 0266



# LIMITED LIABILITY COMPANY (LLC) ANNUAL REPORT

NAME OF LIMITED LIABILITY COMPANY (LLC):
**KPT REMIC LOAN LLC**

STATE OF REGISTRATION: **DE**

SECRETARY OF STATE RLLP ID NUMBER **0479408**

FISCAL YEAR ENDING: ~~12/31/2000~~ 1999
MONTH/DAY/YEAR

FEDERAL EMPLOYER ID NUMBER: [redacted]

IF THIS IS THE INITIAL ANNUAL REPORT FILING, PLEASE COMPLETE THE ENTIRE FORM. IF YOUR REGISTERED LIMITED LIABILITY PARTNERSHIP INFORMATION HAS NOT CHANGED SINCE THE PREVIOUS REPORT, PLEASE CHECK THE BOX AND COMPLETE LINE 7 ONLY. ☐

1. REGISTERED AGENT & REGISTERED OFFICE MAILING ADDRESS:

*Corporation Service Company*
*327 Hillsborough St.*
*Raleigh, NC 27603*

2. STREET ADDRESS AND COUNTY OF REGISTERED OFFICE:

*327 Hillsborough St*
*Raleigh, NC 27601*
*County: Wake*

3. IF THE REGISTERED AGENT CHANGED, SIGNATURE OF THE NEW AGENT: _____
SIGNATURE CONSTITUTES CONSENT TO THE APPOINTMENT

4. PRINCIPAL OFFICE STREET ADDRESS:

3434 Kildaire Farm Road, Suite 200
Raleigh, NC 27606

5. ENTER PRINCIPAL OFFICE TELEPHONE NUMBER HERE: (919) 372-3000
PLEASE INCLUDE AREA CODE

6. ENTER NAME, TITLE, AND BUSINESS ADDRESS OF MANAGER(S) HERE:

| NAME | KPT REMIC Loan, Inc | ADDRESS | 3434 Kildaire Farm Rd, St. 200 |
|---|---|---|---|
| TITLE | Manager | CITY Raleigh | ST-NC ZIP-27606 |
| NAME | KPT Properties, LP | ADDRESS | 3434 Kildaire Farm Rd, St. 200 |
| TITLE | Member | CITY Raleigh | ST-NC ZIP-27606 |
| NAME | | ADDRESS | |
| TITLE | | CITY | ST- ZIP- |

7. BRIEFLY DESCRIBE THE NATURE OF BUSINESS:
Commericial Real Estate

8. CERTIFICATION OF ANNUAL REPORT MUST BE COMPLETED BY ALL LIMITED LIABILITY COMPANIES

_[signature: James Kelly]_     DATE 3/28/01
FORM MUST BE SIGNED BY A GENERAL PARTNER

Daniel J. Kelly, EVP, Konover Property Trust, Inc, General Partner of KPT Properties f
TYPE OR PRINT NAME                    TYPE OR PRINT TITLE
                                      managing member

ANNUAL REPORT FEE: $200.00  MAIL TO: Secretary of State · Corporations Division · Post Office Box 29525 · Raleigh, NC 27626-0525

Exhibit __A__

21 152 9008

State of North Carolina
Department of the Secretary of State

SOSID: 0971399
Date Filed: 5/31/2001 2:26 PM
Elaine F. Marshall
North Carolina Secretary of State

## Certificate of Change/Amendment of Foreign Limited

| A. Return Acknowledgement to: | Office Use |
|---|---|
| Name: | |
| Mailing Address: | |
| City/State/Zip: | |

Read Instructions on reverse before beginning. Attach additional pages as needed.

No. pages attached:

| B. Name of foreign limited partnership: | KPT Properties L.P. |
|---|---|
| C. Name used to transact business in N.C. if different: | KPT Properties Limited Partnership |
| D. Date originally filed with Secretary of State: 12/16/1997 | E. Number originally assigned by Secretary of State: 0971399 |

F. Amend as follows (complete all applicable sections)

1. Name of limited partnership in home state or country changed to:

2. Name used to transact business in N.C. changed to:

3. Name of registered agent changed to:

| 4. Address of registered N.C. office changed to: | | 5. Address of principal office changed to: | |
|---|---|---|---|
| Street/Number | | Street/Number | |
| City/State/Zip | | City/State/Zip | |
| County | | County | |

| 6. Address of general partner(s) changed to: | | 7. General partner(s) added: | |
|---|---|---|---|
| Name | | Name | |
| Street/Number | | Street/Number | |
| City | | City | |
| State or Country/Zip | | State or Country/Zip | |
| County | | County | |

| 8. General partners withdrawn: | | 9. Name(s)/address(es) of limited partners changed to: | |
|---|---|---|---|
| Name | | Name | |
| Street/Number | | Street/Number | |
| City | | City | |
| State or Country/Zip | | State or Country/Zip | |
| County | | County | |

| 10. Address of where list of limited partners is kept changed to: | 11. Dissolution date changed to: |
|---|---|
| Street/Number | |
| City, State, or Country/Zip | |
| County | |

12. Other changes: The name of the general partner is changed to: Konover Property Trust, Inc

G. The following signature by a general partner constitutes an affirmation under the penalties of perjury that the facts herein are true

| MARCUS B. LILES III | VICE PRESIDENT | Marcus B. Liles III | 5/31/01 |
|---|---|---|---|
| Type or print name | Title | Signature | Date |

NOTES:
1. Filing fee is $25.00. This document and one exact or conformed copy must be filed with the Secretary of State.

Exhibit B

# CORPORATE CHARTER APPROVAL SHEET
## ** EXPEDITED SERVICE **     ** KEEP WITH DOCUMENT **

DOCUMENT CODE __17A__  BUSINESS CODE _____

\# _____

Close _____   Stock _____   Nonstock _____

P.A. _____   Religious _____

Merging (~~Transferor~~) __PSCO Acquisition Corp.__
__D03849947__

Surviving (~~Transferee~~) ~~Before~~ __Konover Property Trust, Inc.__
__D04806519__

```
ID # D04806519  ACK # 1000361987712878
LIBER: B00448 FOLIO: 1418 PAGES: 0035
KIMSOUTH REALTY INC.

11/22/2002 AT 01:12 P WO # 0000667946
```

Barcode: 1000361987712878

New Name __Kimsouth Realty Inc__

### FEES REMITTED

- Base Fee: __20__
- Org. & Cap. Fee: _____
- Expedite Fee: __90__
- Penalty: _____
- State Recordation Tax: _____
- State Transfer Tax: _____
- Certified Copies: __2__
- Copy Fee: __77__
- Certificates: _____
- Certificate of Status Fee: _____
- Personal Property Filings: _____
- Other: _____

TOTAL FEES: __187__

- [X] Change of Name
- [X] Change of Principal Office
- [X] Change of Resident Agent
- [X] Change of Resident Agent Address
- [ ] Resignation of Resident Agent
- [ ] Designation of Resident Agent and Resident Agent's Address
- [ ] Change of Business Code
- [ ] Adoption of Assumed Name
- [ ] Other Change(s)

Code __045__

Attention: Beth Horowicz, Esq.

Mail to Address: _____

Credit Card _____   Check __X__   Cash ~~~~

_____ Documents on _____ Checks

Approved By: __6__

Keyed By: _____

COMMENT(S): Per Paul A, acpt By A. w/o listing of Current Directors. Name Reservation OK ~~~~ Per Fax letter from Nat. Corp. Research — NOTE EFF TIME —

CERTIFIED

```
DEPT OF ASSESSMENTS AND TAXATION
CUST ID: 0001006306
WORK ORDER: 0000667946
DATE: 11-22-2002  03:21 PM
AMT. PAID: $187.00
```

Exhibit __C__

EFF: 11-22-02 4:30 pm

# ARTICLES OF MERGER

## PSCO ACQUISITION CORP.
(a Maryland corporation)

### INTO

## KONOVER PROPERTY TRUST, INC.
(a Maryland corporation)

Konover Property Trust, Inc., a Maryland corporation (the "Successor Corporation"), and PSCO Acquisition Corp., a Maryland corporation (the "Merging Corporation"), certify that:

FIRST: The Successor Corporation and the Merging Corporation agree to merge in the manner hereinafter set forth.

SECOND: The merger will be effective on November 22, 2002 at 4:30 p.m. (the "Effective Time"). The Successor Corporation shall survive the merger and continue under the name "Kimsouth Realty Inc."

THIRD: The principal office in Maryland of the Successor Corporation is located in Baltimore City. The principal office in Maryland of the Merging Corporation is located in Baltimore City.

FOURTH: The Merging Corporation does not own any interest in land in the State of Maryland.

FIFTH: (a) The total number of shares of stock of all classes that the Successor Corporation has authority to issue immediately before the Effective Time is 130,000,000, of which (i) 100,000,000 shares are common stock, par value $0.01 per share ("Common Stock"), (ii) 5,000,000 shares are preferred stock, par value $25.00 per share ("Successor Corporation Preferred Stock"), of which 1,000,000 are classified as "Series A Convertible Preferred Stock," and (iii) 25,000,000 shares are excess stock, par value $0.01 per share ("Excess Stock"). The aggregate par value of all shares of all classes of the Successor Corporation immediately before the Effective Time is $126,250,000.

(b) The total number of shares of stock of all classes that the Successor Corporation shall have authority to issue immediately after the Effective Time as changed by the merger shall be 42,377,511, par value $0.01 per share, of which (i) 40,000,000 shares are Common Stock and (ii) 2,377,511 shares are preferred stock, of which 2,377,361 shares are classified as "Series A Convertible Preferred Stock" and 150 shares are classified as "Series B Redeemable Preferred Stock." The aggregate par value of all shares of all classes of stock of the Successor Corporation immediately after the Effective Time as changed by the merger will be $423,775.11.

BALT01:554332|G2643-000000

Exhibit C

SIXTH: The total number of shares of stock of all classes that the Merging Corporation has authority to issue immediately before the Effective Time is 40,000,150 of which (i) 40,000,000 are common stock, par value $0.01 per share ("Merging Corporation Common Stock"), and (ii) 150 shares are preferred stock, par value $0.01 per share ("Merging Corporation Preferred Stock"). The aggregate par value of all shares of all classes of the Merging Corporation immediately before the Effective Time is $400,001.50.

SEVENTH: At the Effective Time, the Merging Corporation shall be merged with and into the Successor Corporation in accordance with the terms and conditions set forth in these articles and the Agreement and Plan of Merger, dated as of June 23, 2002, by and between the Successor Corporation and the Merging Corporation, as amended by Amendment No. 1 to Agreement and Plan of Merger, dated July 26, 2002 (the Agreement and Plan of Merger as amended by Amendment No. 1, the "Merger Agreement").

EIGHTH: The manner and basis of converting or exchanging issued stock of the merging corporations into different stock of a corporation or other consideration and the treatment of any stock of the merging corporations not to be converted or exchanged will be as follows:

(a) Except as set forth in clause (b) of this Article EIGHTH, at the Effective Time, by virtue of the merger and without any action on the part of any stockholder, each share of Common Stock of the Successor Corporation issued and outstanding immediately before the Effective Time shall be converted into the right to receive a cash payment in the amount of $2.10, without interest and subject to any required withholding taxes. Prior to the Effective Time, no shares of Successor Corporation Preferred Stock or Excess Stock are outstanding.

(b) At the Effective Time, by virtue of the merger and without any action on the part of any stockholder, the following stock issued and outstanding immediately prior to the Effective Time shall no longer be outstanding and shall automatically be canceled and retired and shall cease to exist and no consideration shall be issued in exchange therefor: (i) each share of Common Stock of the Successor Corporation owned by any of the subsidiaries of the Successor Corporation and (ii) the 16,615,922 shares of Common Stock of the Successor Corporation owned by the Merging Corporation immediately prior to the Effective Time. Subsidiaries of the Successor Corporation means all those corporations, associations, or other business entities of which the Successor Corporation either (i) owns or controls more than 50% or more of the outstanding equity securities either directly or through an unbroken chain of entities as to each of which 50% or more of the outstanding equity securities is owned directly or indirectly by its parent (provided, there shall not be included any such entity the equity securities of which are owned or controlled in a fiduciary capacity), (ii) in the case of partnerships, serves as a general partner, (iii) in the case of a limited liability company, serves as a managing member, or (iv) otherwise has ability to elect a majority of the directors, trustees or managing members thereof.

Exhibit C

(c)     At the Effective Time, by virtue of the merger and without any action on the part of any stockholder, each share of Merging Corporation Common Stock issued and outstanding immediately prior to the Effective Time shall be converted into one fully paid and nonassessable share of Common Stock of the Successor Corporation.

(d)     At the Effective Time, by virtue of the merger and without any action on the part of any stockholder, each share of Merging Corporation Preferred Stock issued and outstanding immediately prior to the Effective Time shall be converted into one fully paid and nonassessable share of Series B Redeemable Preferred Stock of the Successor Corporation.

NINTH:     The terms and conditions of the transaction set forth in these articles were advised, authorized and approved by the Merging Corporation and the Successor Corporation in the manner and by the vote required by their respective charters and the laws of the State of Maryland. The manner of approval by the Merging Corporation and the Successor Corporation of the transactions set forth in these articles:

(a)     The board of directors of the Merging Corporation, by unanimous written consents dated June 21, 2002 and July 26, 2002, adopted resolutions declaring that the merger is advisable on the terms and conditions set forth in the Merger Agreement, directing that the merger be submitted to the stockholders of the Merging Corporation for action thereon, and recommending that the stockholders approve the merger. The stockholders of the Merging Corporation, by unanimous written consents dated June 21, 2002 and July 26, 2002, approved the merger.

(b)     The board of directors of the Successor Corporation, at a meeting duly called and held on June 23, 2002 and by unanimous written consent dated July 26, 2002, adopted resolutions declaring that the Merger Agreement (including the Two-Thirds Amendments, as that term is defined below in this paragraph) are advisable and in the best interests of the Successor Corporation, directing that the merger and the Merger Agreement be submitted for consideration by the stockholders of the Successor Corporation at a special meeting of stockholders and recommending that the stockholders approve the merger. Notice that stated the purpose of the special meeting was given in the manner required by law to each stockholder entitled to such notice. The merger and the Merger Agreement were approved by the stockholders of the Successor Corporation at a special meeting of stockholders held on November 22, 2002, by the affirmative vote of a majority of all the votes entitled to be cast on the matter. Certain amendments (the "Two-Thirds Amendments") to the charter of the Successor Corporation are set forth in Exhibit A to these articles that, according to the charter as in effect immediately prior to the Effective Time, required approval by holders of two-thirds of the shares of stock of the Successor Corporation entitled to vote thereon. The Two-Thirds Amendments were approved by the stockholders of the Successor Corporation at the special meeting of stockholders by the affirmative vote of two-thirds of all votes entitled to be cast on the matter.

TENTH:     The charter of the Successor Corporation shall be amended as part of the merger at the Effective Time by deleting Articles I through XII thereof in their entirety and inserting in place thereof the contents of Exhibit A attached hereto.

Exhibit C

IN WITNESS WHEREOF, each of the Merging Corporation and the Successor Corporation has caused these Articles of Merger to be signed in its corporate name and on its behalf by its President, each of whom acknowledges that these Articles of Merger are the act of the corporation on behalf of which he is signing and certifies that, to the best of his knowledge, information and belief and under penalties for perjury, all matters and facts contained in these Articles of Merger relating to such corporation are true in all material respects, as of this 22nd day of November, 2002.

ATTEST:                                KONOVER PROPERTY TRUST, INC.

_____                By:_____
Secretary                                   J. Michael Maloney
                                            President


                                       PSCO ACQUISITION CORP.

_____                By:_____
Ast Secretary                               David B. Henry
                                            President

BALT01:554332|32643-000000|

- 4 -

Exhibit C

IN WITNESS WHEREOF, each of the Merging Corporation and the Successor Corporation has caused these Articles of Merger to be signed in its corporate name and on its behalf by its President, each of whom acknowledges that these Articles of Merger are the act of the corporation on behalf of which he is signing and certifies that, to the best of his knowledge, information and belief and under penalties for perjury, all matters and facts contained in these Articles of Merger relating to such corporation are true in all material respects, as of this 22nd day of November, 2002.

ATTEST:                                KONOVER PROPERTY TRUST, INC.

_____                By: _____
Secretary                                  J. Michael Maloney
                                           President


                                       PSCO ACQUISITION CORP.


_____                By: _____
Secretary                                  David B. Henry
                                           President


BALT01: [557900|G2643-000000]

- 4 -

Exhibit C

**UNITED STATES**
**SECURITIES AND EXCHANGE COMMISSION**
Washington, D.C. 20549

**FORM 10-K**

☒ ANNUAL REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
For the fiscal year ended December 31, 2012

OR

☐ TRANSITION REPORT PURSUANT TO SECTION 13 OR 15(d) OF THE SECURITIES EXCHANGE ACT OF 1934
For the transition period from _____ to _____

Commission file number 1-10899

**Kimco Realty Corporation**
(Exact name of registrant as specified in its charter)

| Maryland | 13-2744380 |
|---|---|
| (State or other jurisdiction of incorporation or organization) | (I.R.S. Employer Identification No.) |

3333 New Hyde Park Road, New Hyde Park, NY   11042-0020
(Address of principal executive offices)     (Zip Code)

(516) 869-9000
(Registrant's telephone number, including area code)

Securities registered pursuant to Section 12(b) of the Act:

| Title of each class | Name of each exchange on which registered |
|---|---|
| Common Stock, par value $.01 per share. | New York Stock Exchange |
| Depositary Shares, each representing one-hundredth of a share of 6.90% Class H Cumulative Redeemable Preferred Stock, par value $1.00 per share. | New York Stock Exchange |
| Depositary Shares, each representing one-thousandth of a share of 6.00% Class I Cumulative Redeemable Preferred Stock, par value $1.00 per share. | New York Stock Exchange |
| Depositary Shares, each representing one-thousandth of a share of 5.50% Class J Cumulative Redeemable Preferred Stock, par value $1.00 per share. | New York Stock Exchange |
| Depositary Shares, each representing one-thousandth of a share of 5.625% Class K Cumulative Redeemable Preferred Stock, par value $1.00 per share. | New York Stock Exchange |

Securities registered pursuant to section 12(g) of the Act:     None

Indicate by check mark if the registrant is a well-known seasoned issuer, as defined in Rule 405 of the Securities Act.   Yes ☒   No ☐

Indicate by check mark if the registrant is not required to file reports pursuant to Section 13 or Section 15(d) of the Act.   Yes ☐   No ☒

Indicate by check mark whether the registrant (1) has filed all reports required to be filed by Section 13 or 15(d) of the Securities Exchange Act of 1934 during the preceding 12 months (or for such shorter period that the registrant was required to file such reports), and (2) has been subject to such filing requirements for the past 90 days.   Yes ☒   No ☐

Indicate by check mark whether the registrant has submitted electronically and posted on its corporate Web site, if any, every Interactive Data File required to be submitted and posted pursuant to Rule 405 of Regulation S-T (§ 232.405 of this chapter) during the preceding 12 months (or for such shorter period that the registrant was required to submit and post such files).   Yes ☒   No ☐

Indicate by check mark if disclosure of delinquent filers pursuant to Item 405 of Regulation S-K (§ 229.405 of this chapter) is not contained herein, and will not be contained, to the best of registrant's knowledge, in definitive proxy or information statements incorporated by reference in Part III of this Form 10-K or any amendment to this Form 10-K.   ☒

Indicate by check mark whether the registrant is a large accelerated filer, an accelerated filer, a non-accelerated filer, or a smaller reporting company. See the definitions of "large accelerated filer," "accelerated filer" and "smaller reporting company" in Rule 12b-2 of the Exchange Act.

| Large accelerated filer | ☒ | Accelerated filer | ☐ |
|---|---|---|---|
| Non-accelerated filer | ☐ | Smaller reporting company | ☐ |
| (Do not check if a smaller reporting company.) | | | |

Indicate by check mark whether the registrant is a shell company (as defined in Rule 12b-2 of the Act).   Yes ☐   No ☒

The aggregate market value of the voting and non-voting common equity held by non-affiliates of the registrant was approximately $7.4 billion based upon the closing price on the New York Stock Exchange for such equity on June 30, 2012.

(APPLICABLE ONLY TO CORPORATE REGISTRANTS)
Indicate the number of shares outstanding of each of the registrant's classes of common stock, as of the latest practicable date.

Source: KIMCO REALTY CORP, 10-K, February 27, 2013   Powered by Morningstar® Document Research℠
The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Exhibit D

## FORWARD-LOOKING STATEMENTS

This annual report on Form 10-K ("Form 10-K"), together with other statements and information publicly disseminated by Kimco Realty Corporation (the "Company") contains certain forward-looking statements within the meaning of Section 27A of the Securities Act of 1933, as amended, and Section 21E of the Securities Exchange Act of 1934, as amended. The Company intends such forward-looking statements to be covered by the safe harbor provisions for forward-looking statements contained in the Private Securities Litigation Reform Act of 1995 and includes this statement for purposes of complying with the safe harbor provisions. Forward-looking statements, which are based on certain assumptions and describe the Company's future plans, strategies and expectations, are generally identifiable by use of the words "believe," "expect," "intend," "anticipate," "estimate," "project" or similar expressions. You should not rely on forward-looking statements since they involve known and unknown risks, uncertainties and other factors which are, in some cases, beyond the Company's control and could materially affect actual results, performances or achievements. Factors which may cause actual results to differ materially from current expectations include, but are not limited to (i) general adverse economic and local real estate conditions, (ii) the inability of major tenants to continue paying their rent obligations due to bankruptcy, insolvency or a general downturn in their business, (iii) financing risks, such as the inability to obtain equity, debt or other sources of financing or refinancing on terms favorable to the Company, (iv) the Company's ability to raise capital by selling its assets, (v) changes in governmental laws and regulations, (vi) the level and volatility of interest rates and foreign currency exchange rates, (vii) risks related to our international operations, (viii) the availability of suitable acquisition and disposition opportunities, (ix) valuation and risks related to our joint venture and preferred equity investments, (x) valuation of marketable securities and other investments, (xi) increases in operating costs, (xii) changes in the dividend policy for the Company's common stock, (xiii) the reduction in the Company's income in the event of multiple lease terminations by tenants or a failure by multiple tenants to occupy their premises in a shopping center, (xiv) impairment charges and (xv) unanticipated changes in the Company's intention or ability to prepay certain debt prior to maturity and/or hold certain securities until maturity and the risks and uncertainties identified under Item 1A, "Risk Factors" and elsewhere in this Form 10-K and in the Company's other filings with the SEC. Accordingly, there is no assurance that the Company's expectations will be realized.

PART I

Item 1.  Business

**Background**

Kimco Realty Corporation, a Maryland corporation, is one of the nation's largest owners and operators of neighborhood and community shopping centers. The terms "Kimco," the "Company," "we," "our" and "us" each refer to Kimco Realty Corporation and our subsidiaries, unless the context indicates otherwise. The Company is a self-administered real estate investment trust ("REIT") and has owned and operated neighborhood and community shopping centers for more than 50 years. The Company has not engaged, nor does it expect to retain, any REIT advisors in connection with the operation of its properties. As of December 31, 2012, the Company had interests in 896 shopping center properties (the "Combined Shopping Center Portfolio"), aggregating 131.3 million square feet of gross leasable area ("GLA"), and 829 other property interests, primarily through the Company's preferred equity investments, other real estate investments and non-retail properties, totaling 26.6 million square feet of GLA, for a grand total of 1,725 properties aggregating 157.9 million square feet of GLA, located in 44 states, Puerto Rico, Canada, Mexico, Chile, Brazil and Peru. The Company's ownership interests in real estate consist of its consolidated portfolio and portfolios where the Company owns an economic interest, such as properties in the Company's investment real estate management programs, where the Company partners with institutional investors and also retains management. The Company believes its portfolio of neighborhood and community shopping center properties is the largest (measured by GLA) currently held by any publicly traded REIT.

The Company's executive offices are located at 3333 New Hyde Park Road, New Hyde Park, New York 11042-0020 and its telephone number is (516) 869-9000. Nearly all operating functions, including leasing, legal, construction, data processing, maintenance, finance and accounting are administered by the Company from its executive offices in New Hyde Park, New York and supported by the Company's regional offices. As of December 31, 2012, a total of 635 persons are employed by the Company.

The Company's Web site is located at _http://www.kimcorealty.com_. The information contained on our Web site does not constitute part of this Form 10-K. On the Company's Web site you can obtain, free of charge, a copy of our Form 10-K, quarterly reports on Form 10-Q, current reports on Form 8-K and amendments to those reports filed or furnished pursuant to Section 13(a) or 15(d) of the Exchange Act of 1934, as amended, as soon as reasonably practicable, after we file such material electronically with, or furnish it to, the Securities and Exchange Commission (the "SEC"). The public may read and copy any materials we file with the SEC at the SEC's Public Reference Room at 100 F Street, NE, Washington, DC 20549. The public may obtain information on the operation of the Public Reference Room by calling the SEC at 1-800-SEC-0330. The SEC also maintains an Internet site that contains reports, proxy and information statements, and other information regarding issuers that file electronically with the SEC at _http://www.sec.gov_.

Source: KIMCO REALTY CORP, 10-K, February 27, 2013                                                                                                                    Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.


Exhibit D

KIMCO REALTY CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS, continued

Ground-Up Development -

The Company is engaged in ground-up development projects, which will be held as long-term investments by the Company. As of December 31, 2012, the Company had in progress a total of three ground-up development projects, consisting of two located in the U.S. and one located in Peru.

During 2011, the Company acquired a land parcel located in Lima, Peru through a newly formed joint venture in which the Company has a 95% controlling ownership interest for a purchase price of 6.8 million Peruvian Sols (USD $2.5 million). This parcel will be developed into a grocery anchored shopping center.

Kimsouth - 

Kimsouth Realty Inc. ("Kimsouth") is a wholly-owned subsidiary of the Company that holds a 13.4% noncontrolling interest in a joint venture which owns a portion of Albertson's Inc. During 2012, the joint venture distributed $50.3 million of which the Company received $6.9 million, which was recognized as income from cash received in excess of the Company's investment, before income tax. During 2011, the joint venture distributed $100.0 million of which the Company received $13.9 million, which was recognized as income from cash received in excess of the Company's investment, before income tax. The income for both 2012 and 2011 was included in Equity in income from other real estate investments, net on the Company's Consolidated Statements of Income.

FNC Realty Corporation –

During 2011, the Company acquired an additional 12.48% interest in FNC Realty Corporation ("FNC") for $12.4 million, which increased the Company's total controlling ownership interest to 69.08%. During 2012, the Company acquired an additional 13.62% interest in FNC for $15.3 million, which increased the Company's total ownership interest to 82.70%. The Company had previously and continues to consolidate FNC. Since there was no change in control from these transactions, the purchase of the additional interest resulted in an increase to the Company's Paid-in capital of $0.1 million and $1.0 million during 2012 and 2011, respectively.

5.  Dispositions of Real Estate:

Operating Real Estate –

During 2012, the Company disposed of 62 operating properties and two outparcels, in separate transactions, for an aggregate sales price of $418.9 million. These transactions, which are included in discontinued operations, resulted in an aggregate pre-tax gain of $85.9 million and aggregate impairment charges of $22.5 million, before income taxes. The Company provided seller financing in connection with the sale of one of the operating properties for $4.2 million, which bears interest at a rate of 6.0% and matures in November 2013. The Company evaluated this transaction pursuant to the FASB's real estate sales guidance and concluded that the criteria for sale recognition were met.

Additionally, during 2012, the Company disposed of four land parcels and two outparcels for an aggregate sales price of $7.1 million and recognized an aggregate gain of $2.0 million and aggregate impairment charges of $0.3 million related to these transactions. The gains from these transactions are recorded as other income, which is included in Other expense, net, and the impairment charges have been recorded as Impairment charges in the Company's Consolidated Statements of Income. The Company provided seller financing in connection with the sale of one of the land parcels for $1.8 million, which bears interest at a rate of 6.5% for the first six months and 7.5% for the remaining term and is scheduled to mature in March 2013. The Company evaluated this transaction pursuant to the FASB's real estate sales guidance and concluded that the criteria for sale recognition were met.

Also, during 2012, the Company sold a land parcel in San Juan del Rio, Mexico for a sales price of 24.3 million Mexican Pesos ("MXN") (USD $1.9 million). The Company recognized a gain of MXN 5.7 million (USD $0.4 million) on this transaction. The gain from this transaction is recorded as other income, which is included in Other expense, net, in the Company's Consolidated Statements of Income.

Source: KIMCO REALTY CORP, 10-K, February 27, 2013

Powered by Morningstar® Document Research℠

The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.

Exhibit D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| IN RE: | § | |
|---|---|---|
| | § | CASE NO. 99-00888-PJW |
| The Cosmetic Center, Inc | § | |
| | § | |
| DEBTOR. | § | |
| | § | |

ORDER TO PAY UNCLAIMED FUNDS

It appearing that the check made payable to KPT Remic Loan LLC, in the amount of $73,604.33 was not charged against the bank account of the debtor's estate within the 90-day limit pursuant to 11 U.S.C.§347 and an unclaimed money report was entered to close the account and transfer the monies into the registry of the Clerk, United States Bankruptcy Court, and

It further appearing that Kimco Realty Corporation C/o Dilks & Knopik, LLC now claims the above monies in the petition attached hereto,

IT IS ORDERED that the Clerk of the Bankruptcy Court pay the sum of $73,604.33, to:

Kimco Realty Corporation
C/o Dilks & Knopik, LLC
35308 SE Center St
Snoqualmie, WA 98065.

Dated: _____                    _____
                                         United States Bankruptcy Judge

KIMCO REALTY CORPORATION AND SUBSIDIARIES

NOTES TO CONSOLIDATED FINANCIAL STATEMENTS, continued

Ground-Up Development –

The Company is engaged in ground-up development projects, which will be held as long-term investments by the Company. As of December 31, 2012, the Company had in progress a total of three ground-up development projects, consisting of two located in the U.S. and one located in Peru.

During 2011, the Company acquired a land parcel located in Lima, Peru through a newly formed joint venture in which the Company has a 95% controlling ownership interest for a purchase price of 6.8 million Peruvian Sols (USD $2.5 million). This parcel will be developed into a grocery anchored shopping center.

Kimsouth – 

Kimsouth Realty Inc. ("Kimsouth") is a wholly-owned subsidiary of the Company that holds a 13.4% noncontrolling interest in a joint venture which owns a portion of Albertson's Inc. During 2012, the joint venture distributed $50.3 million of which the Company received $6.9 million, which was recognized as income from cash received in excess of the Company's investment, before income tax. During 2011, the joint venture distributed $100.0 million of which the Company received $13.9 million, which was recognized as income from cash received in excess of the Company's investment, before income tax. The income for both 2012 and 2011 was included in Equity in income from other real estate investments, net on the Company's Consolidated Statements of Income.

FNC Realty Corporation –

During 2011, the Company acquired an additional 12.48% interest in FNC Realty Corporation ("FNC") for $12.4 million, which increased the Company's total controlling ownership interest to 69.08%. During 2012, the Company acquired an additional 13.62% interest in FNC for $15.3 million, which increased the Company's total ownership interest to 82.70%. The Company had previously and continues to consolidate FNC. Since there was no change in control from these transactions, the purchase of the additional interest resulted in an increase to the Company's Paid-in capital of $0.1 million and $1.0 million during 2012 and 2011, respectively.

5. Dispositions of Real Estate:

Operating Real Estate –

During 2012, the Company disposed of 62 operating properties and two outparcels, in separate transactions, for an aggregate sales price of $418.9 million. These transactions, which are included in discontinued operations, resulted in an aggregate pre-tax gain of $85.9 million and aggregate impairment charges of $22.5 million, before income taxes. The Company provided seller financing in connection with the sale of one of the operating properties for $4.2 million, which bears interest at a rate of 6.0% and matures in November 2013. The Company evaluated this transaction pursuant to the FASB's real estate sales guidance and concluded that the criteria for sale recognition were met.

Additionally, during 2012, the Company disposed of four land parcels and two outparcels for an aggregate sales price of $7.1 million and recognized an aggregate gain of $2.0 million and aggregate impairment charges of $0.3 million related to these transactions. The gains from these transactions are recorded as other income, which is included in Other expense, net, and the impairment charges have been recorded as Impairment charges in the Company's Consolidated Statements of Income. The Company provided seller financing in connection with the sale of one of the land parcels for $1.8 million, which bears interest at a rate of 6.5% for the first six months and 7.5% for the remaining term and is scheduled to mature in March 2013. The Company evaluated this transaction pursuant to the FASB's real estate sales guidance and concluded that the criteria for sale recognition were met.

Also, during 2012, the Company sold a land parcel in San Juan del Rio, Mexico for a sales price of 24.3 million Mexican Pesos ("MXN") (USD $1.9 million). The Company recognized a gain of MXN 5.7 million (USD $0.4 million) on this transaction. The gain from this transaction is recorded as other income, which is included in Other expense, net, in the Company's Consolidated Statements of Income.

Source: KIMCO REALTY CORP, 10-K, February 27, 2013                                                                                                     Powered by Morningstar Document Research
The information contained herein may not be copied, adapted or distributed and is not warranted to be accurate, complete or timely. The user assumes all risks for any damages or losses arising from any use of this
information, except to the extent such damages or losses cannot be limited or excluded by applicable law. Past financial performance is no guarantee of future results.



Exhibit D

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

| IN RE: | § | |
| --- | --- | --- |
| The Cosmetic Center, Inc | § | CASE NO. 99-00888-PJW |
| DEBTOR. | § | |

## ORDER TO PAY UNCLAIMED FUNDS

It appearing that the check made payable to KPT Remic Loan LLC, in the amount of $73,604.33 was not charged against the bank account of the debtor's estate within the 90-day limit pursuant to 11 U.S.C.§347 and an unclaimed money report was entered to close the account and transfer the monies into the registry of the Clerk, United States Bankruptcy Court, and

It further appearing that Kimco Realty Corporation C/o Dilks & Knopik, LLC now claims the above monies in the petition attached hereto,

IT IS ORDERED that the Clerk of the Bankruptcy Court pay the sum of $73,604.33, to:

Kimco Realty Corporation
C/o Dilks & Knopik, LLC
35308 SE Center St
Snoqualmie, WA 98065.

Dated: _____

_____
United States Bankruptcy Judge